PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:23-CR-631-4 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| AARON LOINES, ) | |
| ) | **ORDER ON DEFENDANT'S** |
| ) | **OBJECTIONS TO APPLICATION OF** |
| ) | **851 ENHANCEMENT** |
| Defendant. ) | |

## I. Background

On December 6, 2023, Defendant Aaron Loines was indicted, along with several others. Loines, Defendant Number 4, was charged with no crime that carried a mandatory minimum greater than five years. The Government changed that by filing an enhancement that increases Loines' statutory minimum to ten years and the maximum to life.

Regrettably, while only 24 years-old, Loines' is under federal indictment for the second time. After the Sixth Circuit reversed and vacated Loines' convictions due to an illegal search, his first federal indictment, ultimately, resulted in the imposition of a time-served sentence. *See* 1:20-CR-00293. To ensure that Loines is incapacitated for longer than the less than four years he served for his last federal transgressions, the Government filed a 851 enhancement.[1] (ECF No. 69).

---

[1] *See* 21 U.S.C. § 851.

1:23-CR-631-4

Timing is a problem in this case. First, Loines wasted no time reoffending. He was under a term of federal supervised release only seven months before a Complaint (ECF No. 1) was filed. The Indictment (ECF No. 18), then Superseding Indictment (ECF No. 38) followed. The Indictments are prefaced with allegations of Loines' prior federal convictions, presumably alerting Loines to the possibility of a 851 enhancement. Still, the timing of the enhancement is problematic.

Loines was originally indicted on December 6, 2023. A Superseding Indictment was returned on February 7, 2024. Loines gave notice of his intent to plead guilty on March 8, 2024. *See* ECF No. 65. The undersigned referred the matter to the assigned magistrate judge four days later, on March 12, 2024. Still, it was not until just *moments* before the change-of-plea-hearing, that the United States filed the 851 enhancement. While just barely meeting the requirement of filing and serving the notice *before* Loines pled guilty, it missed the opportunity to provide the "certainty and fairness" promised by the Sentencing Reform Act of 1984 by a very wide margin. Think miles. If the Government had known since December 2023 of its intention to enhance, what took it so long?

Even when dealing with a recidivist like Loines, the Department of Justice's ("DOJ") own policy says "[p]rosecutors are encouraged to make the Section 851 determination, and to file any such notice, at the time the case is charged or as soon as possible thereafter." DOJ, Office of the Attorney General, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases,* 3 (Dec. 16, 2022). That did not happen here.

2

1:23-CR-631-4

## II. Discussion

### A. The Arbitrariness of the Sentence Enhancement

Against this backdrop, Loines argues that the application of the sentence enhancement results in an unwarranted sentence disparity, because it violates the DOJ's *General Department Policies Regarding Charging, Pleas, and Sentencing (2022)* (hereinafter "General Policies Memorandum"). See Defendant's Sentencing Memorandum (ECF No. 89). The DOJ's General Policies Memorandum ("DOJ Memo") sets forth criteria that federal prosecutors should consider in determining whether to decline charges that would trigger for a mandatory minimum sentence:

- The defendant's relevant conduct does not involve the use of violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person;
- The defendant is not an organizer, leader, manager or supervisor of others within a criminal organization;
- The defendant does not have significant ties to large-scale drug trafficking organizations, gangs, or cartels; and
- The defendant does not have a significant criminal history. A significant criminal history will normally be evidenced by three or more criminal history points but may involve fewer or greater depending on the nature of any prior convictions.

ECF No. 89 at PageID #: 693-94 (citing DOJ, Office of the Attorney General, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases* 1-2 (Dec. 16, 2022)). This same guidance is to control determinations regarding recidivists. DOJ, Office of the Attorney General, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, 3 (Dec. 16, 2022). Relying on this criterion, Loines asserts that the United States should have never subjected him to charges triggering the mandatory minimum sentence, because his case meets each factor. See ECF No. 89 at PageID #: 693-94.

The Government shrugs in response, and relies on its prosecutorial discretion to be cloaked in secrecy, as it rotely recites,

3

1:23-CR-631-4

> [t]he policies contained in these memoranda, and internal office procedures adopted pursuant thereto, are intended solely for the guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States.

*See* United States' Supplemental Sentencing Memorandum (ECF No. 130) (citations omitted).

Congress entrusted 851 enhancement decisions only to federal prosecutors. For this reason, "the Commission, defendants, their counsel, and federal district and appellate court judges are powerless to do anything but complain about arbitrary application of 851 enhancements." *United States v. Young*, 960 F. Supp. 2d 881, 903 (N.D. Iowa 2013).

Even with such unequaled authority, there is "an equal right—even duty—to call out the DOJ on its application of the [] national policy, its secrecy in applying 851 enhancements, and the completely arbitrary way in which it could continue to apply these devastating enhancements[.]" *Young*, 906 F. Supp. 2d at 903.

The optimism espoused in *Young* is drained of its lividity. *Young* held out hope that the charging policy outlined in the 2013 Holder Memo would result in less applications of disparate 851 enhancements among similarly situated defendants, but that optimism has since been undermined. Over a decade later, federal prosecutors—as in this case—continue applying 851 enhancements without an obligation to explain how the enhancement complies with the DOJ's own publicized policies. More importantly, there is no way to judge whether the most deserving defendants are enhanced or whether the Government made the decision out of spite.

Based on data maintained by the United States Sentencing Commission, over the last three years in cases in which fentanyl was the most prevalent drug, an 851 enhancement was applied in only 2,418 cases out of a possible 56,562 opportunities. The Government withdrew the enhancement in 27% of those cases in which it had been filed. This means that the

4

1:23-CR-631-4

enhancement was applied in only 3%, about 1,730 of the sentences targeted. *Less than two percent of those receiving an enhanced sentence were 25 years-old or younger at sentencing.* Rather, the largest group of persons receiving the 851 enhancement were between the ages of 41 and 50, followed by persons between the ages of 36 and 40, and persons between the ages of 31 and 35. Among drug traffickers generally, only 10 percent were 25 or younger and 23 percent were between the ages of 41 and 50. Rather remarkably, the Sixth Circuit harbors 23% of those who received an enhanced sentence for drug trafficking but only ten percent of all drug trafficking cases.

When the focus is limited to cases involving only fentanyl, Loines' enhancement is even more perplexing. In the last three fiscal years, there have been only 282 occasions in which an enhanced penalty for drug trafficking applied at sentencing and in which the primary drug involved was fentanyl. Among those 282 offenders, 97 percent were US citizens and 97 percent were male. Of that group, 72 percent were Black, 14 percent were Hispanic, and 12 percent were White. *Just four percent of the offenders receiving that enhancement in fentanyl cases were 25 or younger.* Again remarkably, the Sixth Circuit accounted for 31 percent of all enhanced fentanyl trafficking cases but only 15 percent of all fentanyl trafficking cases.

Prosecutorial discretion serves as a cornerstone of the American criminal justice system. When Congress restricted judicial review, federal prosecutors obtained unilateral discretion in the imposition of 851 enhancements, making it all the more vital to adhere to established policies. Despite such importance, no adherence is required.

5

1:23-CR-631-4

The DOJ publicizes policies that purport to discourage "significant and unwarranted sentencing disparities," yet rebukes its own policies. It refuses to reconcile how its own behavior aligns with those policies, especially when it blatantly acts discordant with those policies.

The General Policies Memorandum explains that "[p]rosecutors are encouraged to make the Section 851 determination, and to file any such notice, at the time the case is charged or as soon as possible thereafter." DOJ, Office of the Attorney General, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases* 3 (Dec. 16, 2022). For reasons unknown to anyone except it, the Government filed the 851 notice on March 18, 2024—103 days past the filing of the first Indictment (ECF No. 18) and well over one month after filing the Superseding Indictment (ECF No. 38), in obvious contravention of its own policy.

The arbitrariness of the Government's application of the enhancement is further punctuated when one considers that the General Policies Memorandum also suggests that an "enhancement should not be filed simply to exert leverage to induce a plea or because the defendant elected to exercise the right to trial". *Id*.

Loines received an enhancement that very few eligible offenders receive. The enhancement (ECF No. 69) was made despite there being no allegation that his conduct involved a use of violence, possession of a weapon, the trafficking of drugs to or with minors, or death or serious bodily harm. There are also no allegations that Loines had a significant managerial role in the trafficking of significant drug quantities; nor an allegation that Loines had significant ties to a large-scale criminal organization, cartel, or a violent gang; and, no allegation that Loines had significant history of criminal activity involving the use or threat of violence, or possession of illegal firearms.

1:23-CR-631-4

Even at the § 851(c) hearing, the Government provided no reasonable basis for the enhancement. Instead, it parroted facts that pertain to most criminal drug defendants, "[w]e're talking about the supplier of fentanyl to the drug trafficking organization that engaged in that conduct[]", "we're talking about a 24-year-old boy who has been convicted of F4 trafficking, F5 trafficking, 24-year-old career offender who is a single supplier of fentanyl pills to a drug trafficking organization. That is what we're dealing with right now." Transcript (ECF No. 133). Apparently, the Government does not appreciate that the advisory guidelines and 18 U.S.C. § 3553 already account for those circumstances.

Transparency is crucial to ensuring that the Government applies enhancements consistently and allows others to understand the justification behind such decisions. More importantly, such transparency would allow the Government to earn the trust it seeks and avoid the mistrust and derision its secrecy beckons.

### B. The Constitutionality of Section 851

Loines also argues that:

> Section 851 is unconstitutional as applied to defendants under 21 U.S.C. § 841(b)(1)(A) and (B) pursuant to the Fifth and Sixth Amendments because it mandates a judge to decide facts—*i.e.*, the serious drug felony predicates' finality as well as the length and recency of incarceration—that must be decided by a jury.

ECF No. 129 at PageID #: 955. Loines relies on both *United States v. Fields*, 53 F.4th 1027 (6th Cir. 2022) and *Erlinger v. United States*, 602 U.S. 821 (2024) to support the proposition that a jury must decide any fact that increases the statutory maximum or mandatory minimum sentence for an 851 enhancement. Defendant's Supplemental Memorandum (ECF No. 129). He seeks a ruling requiring the Court to construe *Erlinger*'s holding so that the Fifth and Sixth Amendments not only require a jury to determine whether past offenses were committed on separate occasions

7

1:23-CR-631-4

pursuant to the Armed Career Criminal Act ("ACCA")—but also prior drug felony convictions for Section 851 enhancements. *Erlinger*, 602 U.S. at 825; ECF No. 129 at PageID #: 954-55, 57-61. Specifically, Loines argues that the serious drug felony requirement pursuant to 21 U.S.C. § 841(b)(1)(A) and (B) violate the Fifth and Sixth Amendments because "it mandates a judge to decide facts—*i.e.*, the serious drug felony predicates' finality as well as the length and recency of incarceration—that must be decided by a jury." ECF No. 129 at PageID #: 955.

Arising under the ACCA, *Erlinger* considered whether the Fifth and Sixth Amendments require a unanimous jury to determine beyond a doubt if a defendant's prior offenses occurred on separate occasions. *Erlinger*, 602 U.S. at 825. In a narrow holding, the Supreme Court recognized that the defendant "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt[.]" *Id.* at 835. *Erlinger* emphasizes the importance of a jury trial when a factual determination must be made that could increase a defendant's statutory maximum sentence. To support such a proposition, the Supreme Court relied on *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013). *Erlinger*, 602 U.S. at 833 ("The principles *Apprendi* and *Alleyne* discussed are so firmly entrenched that we have now overruled several decisions inconsistent with them.") In *Apprendi,* the Supreme Court determined that a judge relying on a New Jersey sentence enhancement statute for sentencing was unconstitutional because "[o]nly a jury may find 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Erlinger*, 602 U.S. at 833 (quoting 530 U.S. at 490). In *Alleyne*, the Supreme Court held that the sentence enhancement should have been left for the jury, because "'[a] fact that increases' a defendant's exposure to punishment, whether by triggering a higher maximum *or* minimum sentence, must

8

1:23-CR-631-4

'be submitted to a jury' and found unanimously and beyond a reasonable doubt." *Erlinger*, 602 U.S. at 833 (alteration in original) (quoting *Alleyene*, 570 U.S. at 111-13).

Even while identifying the importance of a jury trial for factual determinations that increase the statutory maximum or mandatory minimum, the Supreme Court continued to recognize the *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), prior conviction exception, which "permit[s] a judge to undertake the job of finding the fact of a prior conviction—and that job alone." *Erlinger*, 602 U.S. at 807.

Ultimately, the Supreme Court determined that there was no need to reconsider *Almendarez-Torres*. *Id.* at 838 ("In the years since that decision, this Court has expressly []limited its reach. It persists as a 'narrow exception' permitting judges to find only 'the fact of a prior conviction.'") (citation omitted). Furthermore, the Supreme Court performed the *Almendarez-Torres* analysis, and determined that the district court went beyond the exception because it had to identify more than his previous convictions and elements to determine whether his prior convictions triggered the ACCA's enhanced penalties. *Id.* at 838-39.

Loines rightfully recognizes that *Erlinger* re-acknowledged that "*Almendarez-Torres* [is] 'at best an exceptional departure' from "historic practice[,] and "parted ways from the "uniform course of decision during the entire history of our jurisprudence." *Id.* at 837. The Sixth Circuit also recognizes that the *Almendarez-Torres* exception applies to 851 enhancements. *See United States v. Williams*, No. 22-5540, 2024 WL 712470, at *4 (6th Cir. Feb. 21, 2024) ("an enhancement for recidivism like the § 851 enhancement 'is as typical a sentencing factor as one might imagine,' . . . and therefore needs no separate fact finding by the jury[.]" ) (citing *United States v. Brown*, No. 21-1663, 2023 WL 1861318, at *8 (6th Cir. Feb. 9, 2023). The law is against Loines on this argument, so the Court rejects it.

9

1:23-CR-631-4

### C. The Finality of the Serious Drug Felony

Loines also argues that the Government cannot apply the 851 enhancement, because the serious drug offense conviction from Case No. 1:20-CR-00293 has not finalized pursuant to § 841(b)(1)(A)-(B). Specifically, he argues that since he is still on supervised release, *i.e.*, a criminal sanction, that period should be included in his finality calculation. Section 841(b)(1) does not define the term "final", but the Sixth Circuit has held that "a prior conviction is 'final' within the meaning of section 841(b) when the time for taking a direct appeal from the judgment of conviction has expired." United States v. Soto, 8 F. App'x 535, 541 (6th Cir. 2001) (citing United States v. Walker, 160 F.3d 1078, 1093 (6th Cir. 1998)). The Court overrules Loines' argument because he did not preserve his right to appeal his prior qualifying conviction through the filing of a notice of appeal by May 2, 2023.

### III. Conclusion

The undersigned can say it no better than Lanny A. Bruer did when he testified before the Judiciary Subcommittee on Crime and Drugs:

> Ensuring fairness in the criminal justice system is [] critically important. Public trust and confidence are essential elements of an effective criminal justice system---our laws and their enforcement must not only be fair, but they must also be perceived as fair. The perception of unfairness undermines governmental authority in the criminal justice process. It leads victims and witnesses of crime to think twice before cooperating with law enforcement, tempts jurors to ignore the law and facts when judging a criminal case, and draws the public into questioning the motives of governmental officials.

*UNFAIRNESS IN FEDERAL COCAINE SENTENCING: IS IT TIME TO CRACK THE 100 TO 1 DISPARITY?: Hearing on H.R. 1459, H.R. 1466, H.R. 265, H.R. 2178 and H.R. 18 Before the Subcomm. On Crime, Terrorism, and Homeland Sec. of the Comm. on the Judiciary H.R.*, 111 Cong. 27 (May 21, 2009) (Statement of Lanny A. Breuer).

1:23-CR-631-4

While the Court finds no legal error in the application of the 851 enhancement based on Loines' conviction from Case No. 1:20-CR-00293, the transgressions of lack of transparency and fair dealing are egregious, but not actionable.  Therefore, if before pronouncement of sentence, Loines affirms the prior conviction alleged in ECF No. 69, the enhancement shall apply.

IT IS SO ORDERED.

| November 13, 2024 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson<br>United States District Judge |